Leon W. SMITH *v.* Nancy Karen SMITH

CA 90-73                                    798 S.W.2d 443

Court of Appeals of Arkansas
Division I
Opinion delivered November 7, 1990

*Williams, Schrantz & Wood, P.A.*, by: *R. Douglas Schrantz*, for appellant.

*Croxton & Boyer*, by: *Ronald L. Boyer*, for appellee.

JUDITH ROGERS, Judge. Leon Smith appeals from a divorce decree and judgment for appellee, Nancy Smith. Appellant argues that the chancellor erred in awarding judgment to appellee in the amount of $22,230.00 for her contributions during the marriage toward the increase in value of appellant's non-marital property. We affirm.

The parties were married on August 29, 1986, and appellee filed for divorce on November 15, 1988. At trial, appellee testified that she is employed as a teacher in the Rogers Public School District and works part-time in a department store. She stated that, when she and appellant were married, they lived in his home with their children from previous marriages. She testified that she received child support from her ex-husband; this money was used for the living expenses of everyone in the household, including appellant and his children. She stated that, in 1986 and 1987, she deposited a total of $50,000.00 in wages into a joint account she shared with appellant; this money was also used for family expenses. Appellee testified that monthly payments of $429.00 toward appellant's debt on his house and $48.53 for the debt on appellant's lot were made during the marriage; appellant owned these pieces of property when they married.

At the time of her marriage to appellant, appellee owned a

one-half interest in a house, a 1983 Oldsmobile, and a house full of furnishings. Appellee testified that her 1983 Oldsmobile was sold during the marriage and the proceeds were applied toward the purchase of cars for appellant's son and appellee's daughter. Appellee stated that appellant owned a Nissan sportscar at the time of their marriage. This car was later sold, and the proceeds were also used for the purchase of the children's vehicles. She stated that the parties bought a 1988 Oldsmobile, and at the time of trial, it had an outstanding debt of approximately $4,000.00. Appellee testified that all of the furnishings from her house were sold; the money was deposited into the joint account and was spent on the family's living expenses. She stated that, when she and appellant separated, she took her clothing, a day bed, a bedroom suite purchased during the marriage, and the 1988 Oldsmobile. she stated that she is now living in an apartment with very little furniture.

Appellee testified that appellant owns a fifty-percent interest in Lighting, Inc., and fifty-percent interest in a TCBY franchise (Shawanda, Inc.). Appellant acquired these assets prior to the marriage. Appellee, however, stated that, during the marriage, she contributed to the increase in value of the TCBY franchise by regularly working in the stores for no salary:

Q . . . . Did you have any contribution to the TCBY businesses?

A Yes, sir, I did. I worked in the stores. My children and his children and he and I all were active participants. The first year of our marriage, we spent three or four nights a week going and checking on the businesses, and we had business meetings. I ran the counter.

Q Do you mean selling yogurt?

A Yes, sir.

Q Where?

A At the Rogers store, the Bentonville store, and the Springdale store, and had waited on customers in the Fayetteville store. And we cleaned the Fayetteville store at midnight one night.

Q You say you'd do this approximately three times a week?

A  We visited the yogurt stores the first year of our marriage three or four times a week.

Q  And how much time would be, would be involved in each visit?

A  Oh, a total time of two or three hours.

Q  And when you say you worked in 'em, other than working the counter what did you do?

A  We cleaned 'em. We worked 'em. We went in to check to see that the people working there were managing correctly, serving right, charging the right amount.

Q  You say, we. Who's we?

A  Mr. Smith and myself, the children.

. . . .

Q  Would all six of you go down there every time?

A  No. Mostly just Mr. Smith and myself.

Q  You and Mr. Smith. Were you compensated in any amount for the work that you performed?

A  No, sir.

Appellee also stated that, before her house was sold, she made one-half of the mortgage payments thereon from the joint account she shared with appellant. That home was sold before she separated from appellant and the proceeds from the sale were put into certificates of deposit in her and her children's names.

Appellant testified that, at the time of the parties' marriage, his stock in Shawanda, Inc., was worth $5,000.00 to $6,000.00 and that, at the time of trial, his equity was worth $40,000.00. He also stated that the parties made payments on appellee's house for at least a year after they were married and contributed to its upkeep from marital funds.

At the conclusion of the hearing, the chancellor stated:

Basically, Ark. Code Ann. § 9-12-315 gives seven items which the Court can take into consideration in determining that there should be an unequal division of the property,

those being the length of the marriage; age, health and station in life of the parties; occupation of the parties; amount and source of income, vocational skills, employability; in state[1] liabilities of each party; opportunity for further acquisition of assets and income; . . . contribution of the party in acquiring property during the marriage; and Federal income tax consequences. Looking at the evidence presented as a whole, the Court does not find that there's anything which justifies other than an equal division of the property, as will be set forth here.

. . . There is insufficient evidence to determine any significant contribution by the defendant toward the plaintiff's one-half interest in the residence which was sold and the defendant is awarded no share of proceeds of that residence.

. . . .

The Court finds that during the marriage, however, there were payments made from the joint assets towards certain items which remain the property of the defendant. The items which were specifically introduced in evidence were house payments on the home which the defendant, is only in the defendant's name, an automobile and the Bella Vista lot. Evidence would be that the total payments on there were nine hundred seventy-seven dollars and fifty cents per month. The Court finds that the plaintiff is entitled to the value of one-half of those payments made for property which defendant retains, and the Court's calculation is eleven thousand seven hundred and thirty dollars and forty-eight cents as plaintiff's value. Now, since those are major items which the defendant will retain, the defendant shall pay that amount to the plaintiff. . . .

. . . [T]he Court finds that the original Shawanda stock was an asset of Mr. Smith before the marriage and, as to the value of that stock prior to the marriage, that value is non-marital property. The Court finds, however, that Mrs.

---

[1] This is set forth in Ark. Code Ann. § 9-12-315 (a)(1)(A)(vii) (Supp. 1989) as the "[e]state, liabilities, and needs of each party . . . ."

Smith is entitled to a portion of the increased value of that property because of her participation directly in the business and because of her participation at home during the time when that value occurred. . . . It was Mr. Smith's testimony that the current net value of that business venture is forty thousand dollars, and at the time they were married it was worth five thousand dollars. That would show a gross increase of thirty-five thousand dollars. There was also testimony that there was one store in existence prior to the marriage and one store which was set up after the marriage. So, the Court would pro-rate that and shows an increase of roughly seven thousand dollars per store. The three stores that were set up during the marriage will show an increase in value of twenty-one thousand dollars, and the Court finds that Mrs. Smith is entitled to one-half of that figure of ten thousand five hundred dollars, as her share of the increase in value.

The chancellor entered a decree granting divorce to appellee on September 27, 1989. In that decree, the chancellor made the following findings:

3. The Court finds that there are not sufficient facts to provide for an unequal division of property.

4. The Court makes the following findings regarding property division, property rights, and award of money:

(a) The Defendant shall retain his residence, personal property, and household goods owned by the Defendant prior to the marriage.

(b) The Plaintiff shall retain the proceeds from the sale of her home owned prior to the marriage of the parties.

(c) The Plaintiff shall be entitled to the sum of $11,730.48 for contributions made to the marriage for payments on debts of the Defendant's property which is nonmarital property.

(d) The Defendant shall retain title to the 1988 Chevrolet Beretta.

(e) The Plaintiff shall retain title to the 1988 Oldsmobile and shall assume the debt on said vehicle.

(f) The Defendant shall retain as nonmarital property all stock owned in Lighting, Inc.

(g) The antenuptial agreement entered into between the parties prior to the marriage is declared void for failure to comply with the provisions of Arkansas Code Annotated Section 9-11-301. The Plaintiff contributed services and time to the TCBY franchises, which were owned by Shawanda, Inc., during the course of the marriage. The Defendant is one-half owner of the stock in Shawanda, Inc. The Plaintiff is entitled to the sum of $10,500.00 for the increase in value of Defendant's interest in Shawanda, Inc. during the marriage.

In paragraph 3 above, the chancellor did not refer to marital property, but the parties have interpreted that paragraph as providing for the division of their marital property. The holding that the antenuptial agreement is void is not at issue on appeal.

In his first point, appellant argues that the chancellor, after finding that appellee was not entitled to an unequal division of marital property, in essence, did make an unequal division of marital assets without stating his reasons therefor. We do not agree. The monetary award to appellee represents a portion of the increase in value of appellant's non-marital property based upon appellee's contributions thereto. Under Ark. Code Ann. § 9-12-315(b)(5) (Supp. 1989), the increase in value of property acquired prior to marriage is specifically excepted from the definition of marital property. The proper disposition of such nonmarital property upon divorce is set forth in Ark. Code Ann. § 9-12-315(a)(2) (Supp. 1989) as follows:

All other [nonmarital] property shall be returned to the party who owned it prior to the marriage unless the court shall make some other division that the court deems equitable taking into consideration those factors enumerated in subdivision (a)(1), in which event the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage.

Although this code section provides that the increase in value of property acquired prior to the marriage remains that

party's sole and separate property, the chancellor may make some other division that he deems equitable. *Yockey* v. *Yockey*, 25 Ark. App. 321, 324, 758 S.W.2d 421, 422 (1988). The chancellor must take into consideration those factors listed in Ark. Code Ann. § 9-12-315(a)(1)(A) (Supp. 1989) and state his reasons for such division in writing. *Id.* These factors are:

(i) The length of the marriage;

(ii) Age, health, and station in life of the parties;

(iii) occupation of the parties;

(iv) Amount and sources of income;

(v) Vocational skills;

(vi) Employability;

(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;

(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

(ix) The federal income tax consequences of the court's division of property.

Although this increase in value is not marital property, it is certainly appropriate to recognize a spouse's contributions toward that increase in value when making a property division. The chancellor's findings that the circumstances warrant such a division will not be reversed on appeal if they are not clearly erroneous. *See Franklin* v. *Franklin*, 25 Ark. App. 287, 294, 758 S.W.2d 7, 10 (1988). The overriding purpose of the property division statute is to enable the court to make a division that is fair and equitable under the circumstances. *Yockey*, 25 Ark. App. at 324, 758 S.W.2d at 422. We find no improper award to appellee of marital property and deny appellant's first point on appeal.

In his second point, appellant argues that the chancellor erred in failing to make a specific finding, using the factors enumerated in Ark. Code Ann. § 9-12-315(a)(1)(A), for his basis

for awarding appellee one-half of the increase in value of appellant's interest in Shawanda, Inc. We disagree. In the decree, the chancellor specifically stated that appellee had contributed services and time to the TCBY franchise owned by Shawanda, Inc., during the course of the marriage. This finding is fully supported by appellee's testimony, quoted above, about her work during the marriage for the TCBY franchise. The chancellor also made extensive findings of fact from the bench about appellee's contributions. We therefore reject appellant's second point.

In his third point, appellant argues that appellee failed to establish the amounts of the increase in value of his stock in Shawanda, Inc., and of appellee's contributions toward that increase. At trial, however, appellant testified that his interest in Shawanda, Inc., was worth $5,000.00 to $6,000.00 at the time of the marriage and that, if he had an arm's-length buyer for the stores, he would probably realize a profit of $40,000.00. This testimony would, in fact, support a larger award to appellee than she was actually given. We cannot tell, from the record presented, exactly how the chancellor did the mathematical calculations to arrive at this award. Nevertheless, we cannot say that the chancellor's findings on this issue are clearly erroneous.

For his fourth point, appellant argues that the chancellor erred in awarding appellee the total amount of her contributions from marital funds toward appellant's debts on his non-marital property and that there is no evidence that these amounts necessarily correspond to the increases in value of appellant's non-marital property which occurred during the marriage. Appellee points out that she presented evidence that, during their marriage, monthly payments of $429.00 on appellant's house, $500.00 payments on the Beretta, and $48.53 payments on appellant's lot were made from marital funds. Although these amounts do not represent the actual increase in value of appellant's non-marital property, no evidence of these increases in value was presented. It was appellant's duty to bring up a record demonstrating error, *Hamilton* v. *Jeffrey Stone Co.,* 25 Ark. App. 75A, 75B, 754 S.W.2d 850, 851 (1988) (supplemental opinion denying rehearing), and he failed to do so.

Appellant also contends that marital funds were used to pay the debt on appellee's house that was sold during their marriage.

As the chancellor stated, however, appellant failed to introduce sufficient evidence of the amount contributed for this purpose.

■ Appellee also points out that the chancellor was balancing the equities and no doubt considered other factors, such as her sale of a significant amount of her personal property upon her marriage to appellant for use in the family's living expenses. These other factors, while not listed in the decree, were discussed by the chancellor at trial. The chancellor is given broad powers under Ark. Code Ann. § 9-12-315 (Supp. 1989) to distribute all property in divorce, non-marital as well as marital, to achieve an equitable division. *Williford* v. *Williford*, 280 Ark. 71, 76, 655 S.W.2d 398, 401 (1983). In the written decree, the chancellor specifically stated that he based this award upon appellee's contributions to the marriage. We hold that this finding adequately complies with the requirements of Ark. Code Ann. § 9-12-315 (Supp. 1989).

Affirmed.

WRIGHT, Acting C.J., and COOPER, J., agree.